## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DEXTER SAVAGE,**

        **Plaintiff,**

**v.**                                        **Case No.  6:05-cv-1262-Orl-DAB**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**

_____/

### MEMORANDUM OPINION AND ORDER

Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.

For the reasons set out herein, the administrative decision is **REVERSED and REMANDED**.

### PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and

Supplemental Security Income (R. 13, 61-63).[1]  These applications were denied initially and upon

reconsideration (R. 36-37, 40-41).  Plaintiff requested and received an administrative hearing before

an Administrative Law Judge ("the ALJ"), and on March 24, 2005, the ALJ issued a determination

denying Plaintiff's applications (R. 13-20, 48).  On June 24, 2005, the Appeals Council denied

Plaintiff's request for review, thus making the ALJ's determination the final decision of the

Commissioner.  This action timely followed.

### NATURE OF CLAIMED DISABILITY

Plaintiff claims disability since an amended onset date of July 18, 2002 (R. 57-58), based on

_____

[1]The Commissioner notes in her brief that Plaintiff's application for SSI was not made part of the record.  In view of the Court's determination on the merits, this omission is not critical.

obesity, heart disease, "COPD short of breath," diabetes with swelling in both knees/ankles/feet,

lightheadedness and dizziness, "problems exerting in any manner," and limited reading skills (R. 68).

*Summary of Evidence Before the ALJ*

Plaintiff was 47 years old at the time of the ALJ's decision (R.14, 61), with a sixth or eighth

grade education[2] and past relevant work experience as a construction laborer and swimming pool

construction laborer (R. 74, 77, 360).  Plaintiff stands 5'11" and, at the time of the decision, weighed

360 pounds (R. 15).

The medical evidence is set forth in the ALJ's decision.  By way of summary, the ALJ found

(and neither side contests) that Plaintiff had the following severe impairments: obesity, mild coronary

artery disease, mild degenerative joint disease of the knees, diabetes, hypertension, and dyslipidemia

(R. 16).

The records show that Plaintiff presented to the hospital on July 18, 2002, complaining of

chest pain and pressure with exertion (R. 140).  Tests revealed a minimal ST segment elevation, an

ejection fraction of 48% and no definite evidence of exercise induced ischemia (R. 129-130).  Plaintiff

underwent a cardiac catheterization which revealed a normal left ventricular ejection fraction of 55%,

and a 40-50% lesion of the mid left anterior descending (R. 128).  It was determined that the lesions

were not severe enough to require intervention, and medical therapy was recommended (R. 126).

Restrictions included no heavy lifting for three days, and Plaintiff was discharged on July 22, 2002.

*Id.*

On July 25, 2002, Plaintiff presented to the Health Care Center for the Homeless, complaining

that the medications he was taking made him dizzy (R. 227).  On examination, it was noted that he

---

[2]Plaintiff gave inconsistent information regarding his education, but there is no dispute that it is limited.

was obese, and his extremities had trace edema.  On follow-up visit August 6, 2002, Plaintiff's blood pressure was 150/90, and his complaints of dizziness continued (R. 226).  His medications were adjusted.

On return visit on August 26, 2002, Plaintiff presented with a blood pressure of 194/118, despite doubling his dose of medication (R. 224).  By September 10, 2002, Plaintiff's pressure was down to 160/80, but he still complained of dizziness (R. 223).  Referral to a cardiologist was made.

Plaintiff saw cardiologist Thomas Kim, M.D., on October 3, 2002 (R. 254-57).  Examination was relatively unremarkable and Dr. Kim concluded that Mr. Savage was suffering from atypical chest discomfort, probably non-cardiac; mild coronary artery disease; insulin dependent diabetes mellitus; hypertension with hypertensive heart disease, treated hyperlipidemia; chronic morbid obesity, chronic lower back discomfort, and leg burning (R. 255).

On return visit to the Health Care Center on November 1, 2002, Plaintiff complained of cough and sharp pain (R. 219).  Impression was chest discomfort (reflux suspected); bronchitis, and diabetes mellitus, poorly controlled (R. 219).  Blood pressure was 168/96.  His numerous medications were adjusted, and he was referred again to cardiology.

A bilateral lower extremity Doppler study taken on January 20, 2003, was normal (R. 163).  On follow-up visit to cardiologist Patrick Mathias, M.D., Plaintiff's lower leg burning was felt to be possibly neuropathy (R. 251).

On March 24, 2003, Plaintiff returned to the Health Center complaining of cough and noting that his sugar has been ranging in the 200's and 300's (R. 215).  Blood pressure was 180 over 100, weight was 343 pounds.  His diabetes was again noted to be under poor control.  On return visit on June 12, 2003, Plaintiff complained of pain in his right side and right knee, and a sore throat (R. 212).

An x-ray of the knee revealed mild early degenerative osteoarthritic changes (R. 177).

Plaintiff saw his cardiologist on June 18, 2003 (R. 250), complaining of shortness of breath, a lot of low back pain and some leg pain.  A stress test was performed on July 14, 2003, revealing a blunted heart rate response on treadmill exercise and resting hypertension, but no ischemic ECG changes (R. 249).  On August 15, 2003, Dr. Mathias indicated that the stress test did not reveal a myocardial ischemia, and noted that Plaintiff's chest pains were better, shortness of breath was "okay," and blood sugars were "reasonably stable" although they sometimes spiked (R. 247).

Dr. Nitin Haté performed a consultative examination on Plaintiff on November 5, 2003 (R. 237-240).  Dr. Haté noted that Plaintiff was 347 pounds and 71 inches tall.  Plaintiff was observed to have partially non-pitting edema below the knees with brown discoloration; and could not squat, due to pain.  Dr. Haté noted that all deep tendon reflexes were lost, and there was a reduced range of motion in the thoracolumbar spine and in both knees.  Plaintiff could toe and heel walk, and straight leg raising test was negative.  Dr. Haté's impression was 1) morbid obesity; 2) diabetes with peripheral neuropathy, "apparently very poorly controlled;" 3) ischemic heart disease with evidence of pedal edema; 4) depression, situational; 5) shortness of breath, probably secondary to obesity. (R. 239).  It was noted that Plaintiff would have difficulty "in any strenuous activity." *Id.*

On November 7, 2003, Plaintiff told his cardiologist that he was upset and depressed, because his wife had been shot and killed (R. 246).  He presented with shortness of breath on exertion, and fluctuating blood sugars, up to 400.  On a November 20, 2003, visit to the Health Center, his sugars continued to be "uncontrolled."  Plaintiff returned to the Health Center through the spring of 2004, reporting difficulties in controlling his diabetes and hypertension (R. 333-336).

Plaintiff underwent a consultative psychological examination on December 3, 2003 (R. 266-

68).   Plaintiff was found to have a mild adjustment disorder, with no serious psychological impairment noted.

On March 23, 2004, Plaintiff reported chronic severe low back pain and shortness of breath to his cardiologist (R. 346).   On May 17, 2004, the Health Center noted that Plaintiff's blood sugar was uncontrolled, and Plaintiff also had anemia, diabetic retinopathy, and a blood pressure of 160/90 (R. 329).   On June 14, 2004 visit, Plaintiff was noted to have bilateral edema (R. 326).   Examination the next day continued to show uncontrolled diabetes (R. 324).   Office notes for the rest of the summer  show continued difficulties with edema and high blood sugar (R. 316-320).   A chest x-ray taken July 13, 2004 was normal (R. 315).

On September 6, 2004, Plaintiff was admitted to the hospital complaining of chest pain (R. 292-305).   At the time, his blood pressure was 220/108 (R. 294).   During the hospitalization, his blood pressure was stabilized, and his pain resolved. (*Id.*).   A cardiac catheterization was performed on September 7, 2004, and revealed normal coronaries and normal ejection fraction (R. 294).

On October 10, 2004, Dr. Mathias, Plaintiff's cardiologist, completed a cardiac residual functional capacity questionnaire. (R. 305-309).   Dr. Mathias indicated that Plaintiff's diagnoses were coronary artery disease, diabetes, hypertension, and possible chronic heart failure, and Plaintiff suffered from shortness of breath, fatigue, weakness and edema (R. 305).   Dr. Mathias opined that Plaintiff had marked limitation of physical activity and was not a malingerer.   In Dr. Mathias' opinion, Plaintiff was incapable of even a "low stress" job, and could stand/walk and sit for less than two hours in an eight hour day. (R. 306-307).   Dr. Mathias noted that Plaintiff should elevate his legs to trunk level, and that he should rarely lift ten pounds (R. 307-308).   In his opinion, Plaintiff should avoid all exposure to extreme cold, extreme heat, cigarette smoke, solvents/cleaners, fumes, odors, gases,

dust and chemicals, and had restrictions from moderate exposure to other environmental hazards (R. 308). Dr. Mathias also indicated that Plaintiff would likely be absent from work more than four days a month due to his medical conditions (R. 309).

On May 5, 2005, Dr. Mathias examined Plaintiff for follow up of his "benign hypertension." (R. 354). Although the review of systems was unremarkable, save for a notation that Plaintiff was "severely obese," Dr. Mathias diagnosed "chronic diastolic heart failure" and pulmonary hypertension (secondary), in addition to the diagnoses of diabetes, hypercholesterolemia, obesity (<100 lbs.), benign hypertension, low back pain and sleep apnea (R. 354). It was noted that Plaintiff "clearly cannot work, due to his multiple medical problems." (R. 355).

The record contains reports from two non-examining state agency employees (R. 198-205; 258-265). The ALJ found neither report to be in compliance with the regulations and expressly did not rely on either report in making his decision (R. 16).

Plaintiff appeared at hearing, and testified as to his pain and limitations. He stated that his legs give out when he tries to walk, and noted that they "burn like fire" (R. 365). He testified as to pain in his chest, and swelling in his feet and knees (R. 367). He stated that he had difficulty breathing, and experienced fatigue upon exertion (R. 371-72). He felt he could lift only one gallon of milk and could stand only ten minutes without pain (R. 374). He could walk a block without shortness of breath (R. 377), and noted that his condition and the medications he takes have impacted his vision (R. 378), and cause him to require frequent rest room breaks.

No vocational expert testified.

In reaching his determination that Plaintiff was not disabled, the ALJ discredited Dr. Mathias' opinion and Plaintiff's testimony and concluded that Plaintiff could perform light work activity, with

no more than occasional balancing, stooping, kneeling, crouching, or crawling.  The ALJ found that Plaintiff was unable to perform his past relevant work (R. 17, 19; Findings 6-7), and applied Rule 202.17 of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R., Pt. 404, Subpt. P., App. 2, (2005) to find that Plaintiff was not disabled (R. 18, 19; Finding. 12).

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### ISSUES AND ANALYSIS

Plaintiff raises several related issues on review: 1) whether the ALJ erred in failing to utilize vocational expert testimony; 2) whether the ALJ improperly discredited the opinion of the treating physician; 3) whether the ALJ failed to consider the impairments in combination; 4) whether the pain standard was appropriately applied; and 5) whether the ALJ improperly discredited Plaintiff's allegations of pain. The Court agrees with Plaintiff that error is apparent on the record, and the determination must be reversed.

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). This case was determined at the fifth step in the evaluation.

**When Vocational Expert Is Necessary**

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the

national economy.  *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].  *Foote*, 67 F.3d at 1558.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  *Foote*, 67 F.3d at 1559.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

Applied here, the ALJ made an express finding that Plaintiff could perform the full range of light work, and made no explicit finding with respect to alleged non-exertional factors that may erode

that residual functional capacity.  This was error.  *See Welch v. Bowen,* 854 F. 2d 436, 439 (11th Cir.

1988) (when non-exertional limitations are alleged, the ALJ must make specific findings on whether

these limitations preclude a wide range of work at the given exertional level); *accord Foote v. Chater,*

67 F.3d at 1559.  Even if the Court were to find that the ALJ's failure to evaluate the allegations of

non-exertional limitations was an implicit finding that Plaintiff had no such non-exertional limitations,

that finding is not supported by substantial evidence and cannot be sustained.

Plaintiff testified that he suffered from back pain and pain due to swelling of his feet, as well

as debilitating fatigue, dizziness, and shortness of breath.  All of these impairments are non-exertional

in nature (at least in part), and all can significantly erode the occupational base at any given level.

Indeed, the ALJ himself *acknowledged* that Plaintiff suffered from non-exertional impairments, in

finding that Plaintiff had severe impairments of "obesity, mild coronary artery disease, mild

degenerative joint disease of the knees, diabetes, hypertension, and dyslipidemia."  *See Evans v.

Chater,* 84 F. 3d 1054 (8th Cir. 1996) (hypertension, obesity, pain, and artherosclerotic heart disease

are significant nonexertional impairments); *Swindle v. Sullivan,* 914 F. 2d 222 (11th Cir. 1990)

(weakness and dizziness are non-exertional impairments); *Gray v. Massanari,* 2001 WL 530704 (S.D.

Ala. 2001) (hypertension is a non-exertional impairment).  A severe impairment under the second step

of the evaluation, as set forth above, is one that significantly limits a claimant's physical or mental

ability to do basic work activities.  20 C.F.R. § 404.1520(c).  Having found that Plaintiff has non-

exertional limitations, the ALJ should have evaluated the occupational impact of those limitations,

with the use of a vocational expert.  Failure to do so was reversible error.

Moreover, pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th

Cir. 1995).  The ALJ must consider all of a claimant's statements about his symptoms, including pain,

and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, Plaintiff has alleged that the ALJ failed to properly evaluate his allegations of pain and limitations.  The Commissioner argues that the ALJ did not err in that he properly discredited Plaintiff's allegations of disabling limitations.  This contention fails on two fronts: 1) the finding is

not supported by substantial record evidence and 2) as shown above, a finding that pain is not *disabling* is not the equivalent of a finding that pain or any other non-exertional impairment does not have a vocational impact sufficient to erode the range of work at a given level.

The ALJ's pain finding, in its entirety, reads as follows: "The claimant testified that he can lift only one gallon of milk, stand for 10 minutes, sit for 10 minutes and walk about ½ block. The undersigned has considered the allegations of the claimant and finds them exaggerated in light of the objective clinical and laboratory findings of record." (R. 17). As noted, the ALJ made a specific finding that Plaintiff suffered from the severe impairments of, among other things, obesity and hypertension. The record is clear and without contradiction that Plaintiff was significantly overweight ("<100 lbs") and this lead to "uncontrolled" hypertension (leading to hospitalization) and persistent shortness of breath, edema and pain upon exertion. The ALJ also found that Plaintiff suffers from diabetes, and the medical records are replete with laboratory results and office treatment notes indicating that the diabetes was uncontrollable, with sugars in the 400's at times. It is axiomatic that high blood pressure and high blood sugar can certainly lead to the fatigue and weakness described by Plaintiff. Although the ALJ speaks to "objective clinical and laboratory findings," he fails to point out what clinical findings are to the contrary, and the Court's own review finds none.[3] The ALJ, therefore, erred in failing to properly evaluate Plaintiff's pain and limitations allegations under the pain standard. Plaintiff has established (and the ALJ has found) severe impairments of hypertension, diabetes and obesity. It was therefore incumbent upon the ALJ to determine whether these impairments are of such severity that they can reasonably be expected to give rise to the alleged pain

---

[3] It may be that the ALJ was referring to the benign or mild findings with respect to Plaintiff's back and knee pain. Plaintiff does not allege disability, however, based solely on orthopedic issues. Although Plaintiff's joint and coronary diseases may be mild, the complications of his obesity, hypertension, and diabetes are most certainly not.

and limitations, and, even if the pain and limitations are not deemed severe enough to be disabling, the ALJ must then evaluate the impact of the non-exertional impairments on Plaintiff's ability to perform work. The absence of any discussion or analysis as to these issues warrants remand.

Plaintiff also contends that the ALJ erred in discrediting the opinion of the treating cardiologist. This contention is a closer call.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record

as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ discredited the opinion of Dr. Mathias, the treating cardiologist, "due to the lack of support by the clinical findings of record and its inconsistency with his own findings and opinions." (R. 17).  The ALJ notes that Dr. Mathias' records indicate only mild heart disease, a finding that is supported by the record.  It appears to the Court, however, that Dr. Mathias' opinion that Plaintiff was unable to work was not based solely on his cardiac condition, but rather on the combination of his "multiple medical problems," including morbid obesity, diabetes, pulmonary hypertension, high cholesterol, edema, back pain, and the recent additions of sleep apnea and chronic diastolic heart failure.  Viewed as such, Dr. Mathias' opinion is not inconsistent with his own findings (which include reference to all of these conditions) or with the findings of the consultative examiner, the Health Center findings, or the records as a whole.  While the Court does not make an express finding that it was error to discredit the opinion of the treating physician, the ALJ should revisit this issue upon remand, in light of the above.[4]

## CONCLUSION

In view of the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and was not made in accordance with proper legal standards, and is therefore **REVERSED.**  The matter is **REMANDED** to the Commissioner for further proceedings consistent

---

[4]In view of the Court's remand, it also makes no finding as to whether the ALJ erred in not evaluating the impairments in combination.

with this Opinion.  The Clerk is directed to enter judgment accordingly and close this case.

**DONE and ORDERED** at Orlando, Florida, this 18th day of August, 2006.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record